**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

UNITED STATES OF AMERICA

    Plaintiff,

v.

EIGHT (8) COUNTERFEIT WATCHES, et. al,

    Defendants.

Case No. 1:17-cv-156

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

On March 17, 2017, the United States filed an in rem forfeiture proceeding against personal property in accordance with Supplemental Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") and the Federal Rules of Civil Procedure. (Doc. 1). This matter has been referred to the undersigned for initial review. (Doc. 9).

Three motions are currently pending before the Court: (1) a motion to dismiss the complaint filed by Claimant Abdullah Luqman[1] (hereinafter "Claimant" or "Luqman"); (2) Claimant's motion for release of property; and (3) the motion of the United States to strike Luqman's claim. For the reasons that follow, the undersigned recommends that

---

[1]Luqman has filed two pro se civil cases in this Court. In Case No. 1:17-cv-132, Luqman alleged that on February 13, 2017, a charge of weapons under disability was dismissed, because the State of Ohio has relieved him of disability and restored his civil rights. He alleged that he sought the return of seven firearms confiscated on September 22, 2016, but that the defendant officers improperly refused to return his guns to him. However, Case No 1:17-cv-132 was dismissed on August 16, 2017 based upon Plaintiff's failure to prosecute his claims.
Plaintiff recently initiated a second civil rights case on August 10, 2017 against the Hamilton County Sheriff's Department, alleging that the Defendant "illegally obtained a search warrant" on September 18, 2016 and arrested him for stolen guns, which charges were later dismissed. Plaintiff further alleges that he was awaiting eye surgery at the time of his arrest. As a result of "sitting in jail for thirty days" unable to post a high bond, Plaintiff alleges that he suffered permanent eye damage, lost business, and suffered mental anguish. The complaint in Case No. 1:17-cv-527 is currently before the undersigned for initial screening under 42 U.S.C. § 1915.

all three pending motions be denied without prejudice to renew. In addition, by separate order filed herewith, the undersigned directs Claimant Luqman to supplement his responses to the Special Interrogatories propounded by the United States, and further directs the United States to supplement its explanation for declining to release additional property seized in this case as to which forfeiture is not being sought.

**I.     Background**

The complaint alleges that on September 21, 2016,[2] the United States (hereinafter the "Government") seized pursuant to a warrant certain items of personal property from 777 Jackson Street, in Cincinnati, Ohio, including eight counterfeit watches ("Defendant 1"), and assorted counterfeit articles of clothing, shoes, and accessories ("Defendant 2"). It appears from the context of the pending motions that additional property was seized at the same time, pursuant to the same warrant, that is not the subject of this civil forfeiture proceeding.

Regardless, the Government alleges that Defendants 1 and 2 are subject to forfeiture under 18 U.S.C. § 2323(a)(1), because all of the listed property either constitutes articles of which the making or trafficking is prohibited under 18 U.S.C. § 2320, or alternatively, constitutes property that was used or intended to be used "in any manner or part to commit or facilitate the commission of an offense referred to in 18 U.S.C. § 2320" (concerning the making or trafficking of counterfeit articles). (Doc. 1 at ¶ 8). The Government alleges that more than three years prior to the execution of the warrant, on July 22, 2013, a confidential source ("CHS") made a controlled purchase of

---

[2]The undersigned infers that the warrant that resulted in the seizure of the items that remain the subject of this civil forfeiture case is a different warrant than the September 18, 2016 and September 22, 2016 warrants referenced in Luqman's two civil cases.

several items from Claimant Luqman at the same address, including watches, jeans, and a counterfeit "Gucci" belt, for the sum of $240.

Luqman's motion to dismiss asserts that on July 22, 2013, the CHS first attempted unsuccessfully to purchase a firearm from him, prior to engaging in "a story stating that he [had been] a victim of robbery and was in need of clothing." (Doc. 4 at 1). Luqman asserts that Claimant "generously offered to [sell] his personal clothing out of his own closet," which is how the CHS "ultimately obtained the counterfeit articles." (*Id.*). Luqman does not dispute that the items listed in the complaint are counterfeit, but argues that "federal law does not prohibit an individual from buying counterfeit products for personal use, even if they do so knowingly." (*Id.*) Claimant's motion maintains that the seized property was "for his personal use" and was not "made [or]…used for trafficking" in counterfeited goods, and therefore is not subject to forfeiture. (*Id.*)

## II. Analysis

For the convenience of the Court, the undersigned first addresses the Government's motion to strike Luqman's claim before turning to the Claimant's motions.

### A. The Government's Motion to Strike (Doc. 15)

\     The Civil Asset Forfeiture Reform Act of 2000 (CAFRA) governs civil forfeiture actions. 18 U.S.C. § 981 *et seq*. Under CAFRA, "any person claiming an interest in the seized property may file a claim…." 18 U.S.C. §983(a)(4)(A). However, in order to contest a civil forfeiture, a claimant must have both statutory standing and Article III standing. *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998). While statutory standing is satisfied by filing a claim that complies with the requirements of Rule G(5) of the Supplemental Rules, in order to establish Article III

standing, the claimant must have "a colorable ownership, possessory, or security interest in at least a portion of the property." *Id.* at 497-498.

The Government has moved to strike Luqman's claim in this case based upon his failure to fully respond to Special Interrogatories served by the Government pursuant to Supplemental Rule G(6) of the Federal Rules of Civil Procedure.[3] The Government asserts that it requires the Claimant's responses in order to establish his identity and standing. Luqman has filed no timely response to the Government's motion.

Luqman's initial responses to the Special Interrogatories were due on June 2, 2017, but on June 14, 2017, the Government extended his deadline to June 23, 2017. In lieu of any substantive response, Luqman has filed a document captioned "Special Interrogatory No. 1," which states:

> On all Interrogatory request[s] I would like to exercise my Miranda Rights. And avoid the circus of these question[s] which [are] virtually impossible to answer except my name[,] addresses[,] previous address, social security no. and other information which is public record and the court has access too! Also in reference to establishing ownership to the property seized. The majority of the property in question was brought from street vendors and given as gifts.

(Doc. 12). Despite being provided with a Declaration for execution, Claimant has failed to make even this limited response under oath, as required by the Federal Rules of Civil Procedure. *See* Rule 33(b)(3), Fed. R. Civ. P.

The United States does not dispute that Luqman had physical possession of the subject property at the time that it was seized, but notes that case law supports that simple physical possession is insufficient to establish standing under Article III, and that

---

[3]When a claimant has filed a motion to dismiss the action, the Government is required to serve its interrogatories within 21 days of the date the motion is served. Supplemental Rule G(6)(a). Luqman filed his motion to dismiss on April 19, 2019, and the Government served its Special Interrogatories on May 10, 2017.

4

the claimant must also allege facts "regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property. *See $515,060.42 in U.S. Currency*, 152 F.3d at 498. Because of the danger of false claims, even Supplemental Rule G(5)(a)(i) requires more than a conclusory statement of ownership. *See also $25,982.28 in U.S. Currency*, 2015 WL 410590 at *1 (N.D. Ohio Jan. 29, 2015) (internal citations omitted). Thus, courts have consistently held that claimants in civil forfeiture cases must answer interrogatories regarding their interest in the defendant property where the claimant's ownership interest in the property forms a central issue in the proceeding. *See $133,420.00 in U.S. Currency*, 672 F.3d 629, 642-43 (9th Cir. 2012).

On the other hand, courts have found that in some cases, the Government's own allegations can establish a claimant's standing. *See, e.g., $515,060.42 in U.S. Currency*, 152 F.3d at 499-500 (collecting cases). In the instant case, the Government's complaint alleges that all of the defendant property was seized from Claimant Luqman by the Federal Bureau of Investigation ("FBI") on September 21, 2016. The complaint alleges that Luqman operated a snack business out of the front room of 777 Jackson Street in Cincinnati, Ohio, which appears to be the Claimant's residence, though that fact is not entirely clear from the complaint. Unlike a sum of cash in a vehicle, the subject property consists largely of clothing and similar personal property items found in what appears to have been the Claimant's residence. Thus, the allegations of the Government's complaint and the nature of the property seized raise some question, in the undersigned's view, as to the centrality of the information sought

and legitimacy of any challenge to Article III standing that the Government claims to be exploring through the Special Interrogatories.

Still, there is no question that the Special Interrogatories, a copy of which are attached to the Government's motion, all generally relate to the Claimant's identity and to his relationship to the seized property. Although the Government does not allege that anyone else lived in the residence or that it has some other basis for challenging standing, it's argument that it requires the information to more fully determine Luqman's standing remains unopposed by Luqman. The Government has adequately supported its position that each of the Interrogatories relates to Claimant's standing, identity, and asserted defense to forfeiture.

The undersigned further agrees with the Government that Luqman's vague and limited response that he has an ownership interest because he obtained a "majority" of the seized items "from street vendors and… as gifts" constitutes a wholly insufficient and incomplete response to the Special Interrogatories. Such as it is, the response fails to identify with any precision which of the seized items were allegedly purchased from vendors, which were allegedly received as gifts, the dates on which the alleged transactions may have occurred, or any other highly relevant information pertinent to the Claimant's alleged ownership interest.

The Government cites Supplemental Rule G(8)(c)(i)(A) as providing for the sanction of dismissal if a claimant refuses to respond to properly served special interrogatories under Rule G(6). *See also United States v. Twelve Thousand Six Hundred Sixty-Seven and 00/100 Dollars in United States Currency*, 2014 WL 2535229, at *2 (S.D. Ohio June 5, 2014). While the rule permits the Government to make a

motion to strike a claim or answer based on a claimant's failure to respond to Special Interrogatories, striking a claim for failing to respond is not mandatory, but discretionary with this Court. On the record presented, where the allegations of the complaint itself suggest that the Claimant has standing to challenge the civil forfeiture, the undersigned declines to recommend dismissal of Luqman's claim based upon his failure to fully respond to the Special Interrogatories. Giving the Government the benefit of the doubt and in light of the failure of Claimant to respond to the Government's motion to strike, the undersigned will instead direct Claimant to further respond to the Interrogatories. *See generally United States v. $77,090.00 U.S. Currency Tompkins*, 2017 WL 413799, at *7 & n.5 (M.D. Tenn. Jan. 31, 2017).

Luqman's stated refusal to respond based upon the exercise of his "Miranda Rights" is construed to be an invocation of his Fifth Amendment privilege against self-incrimination. However, such a broad, wholesale assertion of Fifth Amendment rights to avoid responding to <u>all</u> of the Special Interrogatories does not excuse the Claimant's obligation to respond to those questions that are not incriminatory, including (at least potentially) his identity and other information that he claims is of "public record." To the extent that Luqman intends to assert a Fifth Amendment privilege, he must do so with greater particularity by asserting the privilege only as to those Special Interrogatories that would elicit potentially incriminating information.

Moreover, while a claimant seeking to prevent a civil forfeiture need not forfeit all Fifth Amendment rights, the claimant is cautioned that he cannot leverage that right solely for his benefit. *See e.g., $133,420.00*, 672 F.3d at 642-643 (claimant cannot answer some special interrogatories supporting his claim and assert Fifth Amendment

7

as to questions testing their veracity; district court did not err in striking responses); *United States v. $110,873.00 in U.S. Currency*, 159 Fed Appx. 649, 652-53 (6th Cir. 2005) (court did not "penalize" claimant for exercising Fifth Amendment rights by granting summary judgment to the United States in civil forfeiture case, when claimant remained silent as to the source of the money; claimant cannot use Fifth Amendment as both a sword and a shield). If Luqman fails to supplement his responses to the Special Interrogatories, then the Court may reconsider granting the Government's motion to strike his claim, unless the Court determines that the Fifth Amendment privilege has been properly invoked. Moreover, any information withheld by Luqman under a Fifth Amendment privilege may not later be used as a "sword" to defeat the civil forfeiture.

Last, the undersigned notes that the Government includes - in a footnote - a cursory argument that because all of the property for which the Government seeks forfeiture is counterfeit, it is "contraband" under 49 U.S.C. § 80302(a)(6)(D). Assuming that the counterfeit items are "contraband," the Government "raises the question of whether the Claimant can assert an ownership interest," since 18 U.S.C. § 983(d)(4) explicitly prohibits the assertion of any ownership interest in "contraband or other property it is illegal to possess." (Doc 15 at 11). The undersigned declines to reach this issue in the context of the motion to strike, as it is not clear from the decision to relegate the discussion to a footnote, or from the Government's phrasing that merely "raises the question" whether the Government is seeking dismissal of the claim on this basis.[4]

### B. Claimant's Motion to Dismiss (Doc. 4)

Luqman's motion to dismiss the in rem case against the seized property rests on the argument that the counterfeit items seized by the Government were "not for sale"

---

[4] The Government remains free to flesh out its argument in a later dispositive motion.

and therefore not used in trafficking. (Doc. 4 at 2). However, as discussed, Luqman has declined to respond to the Special Interrogatories served on May 10, 2017 under Supplemental Rule G(6). Rule G(6)(C) provides that "[t]he Government need not respond to a claimant's motion to dismiss the action under Rule G(8)(B) until 21 days after the claimant has answered these interrogatories." *See also United States v. $22,900.00 in U.S. Currency*, 2014 WL 2574052 at *1-2 (M.D. Fla., June 9, 2014) (denying motion to dismiss as premature because the claimant had not answered special interrogatories). Therefore, Luqman's motion to dismiss this lawsuit should be denied, without prejudice to renew following his submission of a more complete response to the Special Interrogatories and/or following a response on the merits of any renewed motion by the United States.

### C. Claimant's Motion for Release of Property (Doc. 11)

The third motion presented before the undersigned is Luqman's motion to release "all items" that are "not consider[ed] counterfeit such as: IPad, IPhone, birth certificate, Business Ledgers, social security card, clothing items sunglasses [etc.]." (Doc. 11). A motion or petition for release of property in a civil forfeiture action is governed by 18 U.S.C. § 983(f).

The statute provides for prompt disposition of such motions.[5] Thus, under 18 U.S.C. §983(f)(1), a claimant whose property has been seized is entitled to <u>immediate</u> release of the seized property if the record shows the following five conditions:

(A) the claimant has a possessory interest in the property;

---

[5] Ordinarily, such motions are to be decided within thirty (30) days of the filing of the petition or motion, unless extended by consent of the parties or by the court for good cause. 18 U.S.C. §983(f)(5). The Government filed its response to Luqman's motion on August 3, 2017, and Luqman's reply time did not expire until August 17, 2017.

(B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of trial;

(C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless.

(D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if ti is returned to the claimant during the pendency of the proceeding; and

(E) none of the conditions set forth in paragraph (8) applies.

The referenced exceptions to release of seized property in paragraph (8) provide as follows:

(8) This subsection shall not apply if the seized property –

(A) is contraband….

(B) is to be used as evidence of a violation of the law;

(C) by reason of design or other characteristic, is particularly suited for use in illegal activities; or

(D) is likely to be used to commit additional criminal acts if returned to the claimant.

*Id.*

Some of the property as to which the Government seeks forfeiture is asserted to be counterfeit clothing and counterfeit sunglasses. However, the Government appears to concede that *none* of the specific property listed in Claimant's motion for release is counterfeit. In addition, with the possible exception of some sunglasses and clothing items,[6] none of the items as to which Luqman seeks release have been included in the

---

[6]The Government does seek forfeiture of counterfeit items of clothing and sunglasses. For purposes of the pending motion, the undersigned assumes that some items of clothing and sunglasses are not counterfeit and therefore are not included on the defendant list of property as to which forfeiture is sought.

10

list of "defendants" in this in rem lawsuit. Nevertheless, the Government objects to the release of any of the items on grounds that the items are evidence both in this civil forfeiture case, <u>and</u> "in a related criminal investigation into the Claimant's activities." (Doc. 18 at 2). The Government maintains that all of the items were seized pursuant to the same Federal Search and Seizure Warrant executed on September 21, 2016.

The Government has failed to adequately explain how the non-counterfeit items are connected to this in rem proceeding. The undersigned has closely examined the complaint, which does include a reference to "business ledgers showing purse sales for the period of January- May 2016, totaling in excess of $45,000.00." (Doc. 1 at ¶18). To that extent, the undersigned infers that the business ledgers included in the Claimant's motion to release may be "related to" the civil forfeiture proceeding. However, there is nothing in the complaint and the Government has offered no explanation as to how other property that Claimant seeks to release relates to this civil forfeiture case.

The relevant statute generally requires the Government either to institute civil forfeiture proceedings with respect to the seized property within ninety days, or to release said property.[7] 18 U.S.C. §983(a)(3). Here, the Government does not (apparently) seek forfeiture of any items that are not alleged to be counterfeit, and has yet to offer any explanation as to why items such as the referenced IPad, IPhone, and social security card would otherwise be subject to forfeiture if they are related to some (undefined) other criminal activity or investigation.

---

[7]"In circumstances where the government does not take any of the actions set forth in § 983(a)(3)(B) within the ninety-day period, the second sentence of § 983(a)(3)(C) applies if the government later pursues a criminal forfeiture action in relation to the same assets." U.S. v. One Silicon Valley Bank Account, 3300355711, In the Amount of One Hundred Thirteen Thousand Nine Hundred Fifty-Two and 62/100 Dollars ($ 113,952.62), 549 F.Supp.2d 940, 948 (W.D. Mich. ,2008)(internal citation omitted).

Something more than a vague reference to an unspecified "ongoing criminal investigation" is required to permit the Government to continue to hold indefinitely items of personal property that are not alleged to be counterfeit and that have not been identified as defendants in this in rem civil forfeiture proceeding or otherwise shown to be required as evidence.[8]  *See also generally Nexus Holdings, Inc. v. Dafcan Finance, Inc.*, 531 F.Supp.2d 839, 844 (S.D. Ohio, 2008) (assuming §983 applies rather than Criminal Rule of Procedure 41(g), where the government had not instituted forfeiture proceedings and claimed an interest in an "ongoing criminal investigation," government did not have sufficient interest to retain stock and seized money as to which borrower had demonstrated interest in release).

On the other hand, Luqman's petition/motion for release of the property fails to show that he complied with the requisite steps to obtain the return of any property prior to filing the his motion for release.  Procedurally, § 983(f) requires that the claimant first seek relief directly from the appropriate official.  18 U.S.C. § 983(f)(2). Only if the property is not released within fifteen days may the claimant file a petition with this Court detailing "(i) the basis on which the requirements of paragraph (1) are met; and (ii) the steps the claimant has taken to secure release of the property from the appropriate official." § 983(f)(2)–(3).  Thus, § 983(f) provides a detailed mechanism for obtaining the release of seized property.  *U.S. v. Contents of Accounts*, 629 F.3d 601, 607 (6th Cir., 2011).  Even if Luqman can show the steps he took to obtain the return of his property from the appropriate official prior to seeking relief in this Court, he bears the burden of showing that he meets all five requirements § 983(f)(1) for release of the

---

[8] Pursuant to 18 U.S.C. §983(f)(4), "the Government may in appropriate cases submit evidence ex parte in order to avoid disclosing any matter that may adversely affect an ongoing criminal investigation or pending criminal trial."

property. To the extent that the Government claims that any of the property may be subject to forfeiture, "substantial hardship" is very narrowly defined. *Id.* at 608. Moreover, any hardship demonstrated by the party seeking return of the property must outweigh the risk that the returned property may be "destroyed, damaged, lost, concealed, or transferred." 18 U.S.C. §983(f)(1)(D).

Based upon the Government's representation to this Court that the referenced items continue to be held as evidence either in this civil forfeiture proceeding and/or in a related and ongoing criminal investigation, and particularly in light of the failure of Claimant to demonstrate: (1) that he complied with procedural requirements prior to filing his motion/petition for release of the property; and (2) that he is entitled to return of the property under § 983(f)(1), the undersigned will recommend the denial of Claimant's motion at this time. However, the undersigned will direct the Government to explain its basis for continuing to hold the property as to which release has been sought by separate order, and the recommended denial of Claimant's pending motion for release will be without prejudice to Claimant to renew that motion at a later date.

### III. Conclusion and Recommendation

For the reasons explained above, **IT IS RECOMMENDED:**

(1) That the Government's Motion to Strike Luqbal's Claim (Doc. 15) be DENIED, without prejudice to renew should Luqbal fail to comply with the separate Order entered this day directing him to supplement his responses to the Special Interrogatories;

(2) That Claimant Luqball's motion to dismiss (Doc. 4) and motion/petition for release of certain property (Doc. 11) also be DENIED without prejudice to renew.

    *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

UNITED STATES OF AMERICA

    Plaintiff,

v.

EIGHT (8) COUNTERFEIT WATCHES, et. al,

    Defendants.

Case No. 1:17-cv-156

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).